# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| ADAM WILLIAMS, | ) |  |
|---|---|---|
| Petitioner, | ) |  |
| v. | ) | CAUSE NO. 3:12-CV-240 PS |
| SUPERINTENDENT, | ) |  |
| Respondent. | ) |  |

## OPINION AND ORDER

Adam Williams, a *pro se* prisoner, was arrested for conspiracy to manufacture methamphetamine, dealing methamphetamine, and the possession of precursors. He was found guilty on these charges in the Tippecanoe Superior Court on October 31, 2011, and sentenced on January 31, 2012. At sentencing, the trial judge determined Williams to be an habitual offender, and imposed a total sentence of thirty-six years. He appealed to the Court of Appeals of Indiana claiming there was insufficient evidence at trial to support his conviction. The conviction was affirmed and his petition for transfer to the Indiana Supreme Court was denied. Williams now brings this habeas corpus petition arguing only that there was insufficient evidence to support his convictions.

Those claims were adjudicated on the merits in the state court proceeding. Therefore, an application for a writ of habeas corpus can only be granted if the state court's decision resulted from either (1) an unreasonable application of federal law, or (2) an unreasonable determination of the facts in light of the evidence presented at trial. 28 U.S.C. § 2254(d). Williams does not argue that any of the facts were unreasonably determined by the state courts. Rather, he argues that the facts were insufficient to support the guilty verdict. In his words, the evidence presented

at trial left an "eminently reasonable doubt whether I ever intended or conspired to cook meth, or if I possessed precursors" ECF 1 at 3.

When Williams presented this argument to the Court of Appeals of Indiana, it found more than enough evidence presented at trial to support his convictions. Specifically, in *Williams v. State*, No. 79A02-1101-CR-198, Ind. App. Unpub. LEXIS 1495, it found that on December 10, 2009, Lafayette police officers began conducting surveillance on Williams and a friend, Andrew Humphreys, after receiving information that the two of them were manufacturing methamphetamine. During their surveillance on the afternoon of December 10, 2009, police officers followed Williams and Humphreys around town as the two men visited various grocery and drug stores purchasing pseudoephedrine, a common ingredient used in making methamphetamine.

Later that evening, police officers observed the pair purchase rubber gloves at a gas station, and then drive from the gas station to Leslie Mantle's house. Mantle testified at trial that once inside his house, Williams offered him $200 to store some items in his barn. The police were watching the barn from various locations and witnessed two men walking with a duffel bag between the car Williams was driving, the house, and the barn. When Williams and Humphreys left the house, police observed them speeding and conducted a traffic stop. After a canine unit alerted, police searched the car and found suspicious articles often used in methamphetamine manufacturing, such as batteries, coffee filters, and clutch fluid. However, at this time, the police released the two men without collecting any evidence. But the police continued to observe Williams and Humphreys into the early hours of December 11, 2009.

At 3:30 the next morning, Williams and Humphreys were observed by police returning to Mantle's home. Mantle testified that the duo asked him for permission to use the basement. Mantle noticed a strong and familiar odor on the two men, confronted them about it, and Humphreys admitted they were "making a batch of meth." *Id.*, Slip op. at 3.

Around 6:30 or 7:00 A.M., police observed Williams and Humphreys again leaving Mantle's home. Soon after they left, the police arrived at Mantle's property and searched both the house and the barn. In the barn the police found an active batch of methamphetamine, which they estimated had been cooking between two and twelve hours. The police also found a slew of other substances and devices in the barn that are commonly used in the production of methamphetamine. Some of these items included "hydrochloric acid generators, a modified air compressor tank containing anhydrous ammonia, remnants of lithium batteries on the barn floor, a reactionary vessel near the basement doors, some camp fuel, and a duffel bag that contained zylene, coffee filters, and a plastic pitcher filled with paper towels." *Id.,* Slip op. at 4.

Does all of this evidence–including the police observations, Mantle's testimony, and the physical evidence–leave reasonable doubt? Not likely. However, I need not decide that question. My inquiry is significantly more limited. Clearly established United States Supreme Court law provides that a jury verdict can only be overturned if no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 324 (1979). What is more, on habeas corpus review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was [an] 'objectively unreasonable'" application of clearly established Supreme Court

3

law. *Cavazos v. Smith*, 506 U.S.___; 132 S. Ct. 2, 2 (2011) (per curiam). Therefore, my analysis must be "doubly" deferential. *See Harrington v. Richter*, 562 U.S.___; 131 S. Ct. 770, 788 (2011).

The court of appeals had no trouble finding sufficient evidence presented at trial from which a reasonable jury could have found Williams guilty on the conspiracy and precursor charges. It pointed out that Williams admitted he used methamphetamine and wanted to acquire more. He also admitted that he drove Humphreys around town to drug stores to purchase pseudoephedrine. Mantle testified that Williams offered him $200 to use his barn. Also, Humphreys told Mantle that they were making methamphetamine in the barn. Moreover, a slew of incriminating physical evidence was seized from the barn shortly after Williams and Humphreys left, not least of which was an active batch of methamphetamine. As if this wasn't enough for the court of appeals, it also noted that the physical and testimonial evidence was confirmed and corroborated by police surveillance.

In concluding its discussion of the conspiracy charges, the court of appeals remarked, "in light of this evidence, and despite Williams's self-serving testimony to the contrary, the jury could reasonably conclude that Williams agreed to manufacture the methamphetamine with both Humphreys and Mantle." *Williams,* Slip op. at 8. "Williams's argument on appeal merely invites us to reweigh the evidence, credit his testimony over the other substantial evidence that was presented, and substitute our judgment for that of the jury, which we will not do." *Id*. Again relying on the physical evidence found in the barn, Mantle's testimony, and police observations, the court of appeals also had no trouble concluding that the evidence sufficiently established Williams possessed, at least constructively, precursors for manufacturing methamphetamine.

4

Adding a second layer of deference, I ask whether the conclusion reached by the Court of Appeals of Indiana is objectively unreasonable. I find that it is not. Clearly established law did not permit the Indiana Court of Appeals to substitute its judgment for that of an Indiana jury. Neither can I substitute my judgment for that of the court of appeals. In making this sufficiency of the evidence claim, petitioner is asking that I ignore the deference owed to the appeals court's interpretation, reweigh the evidence, and reach a different conclusion. This I cannot do.

"If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." SECTION 2254 HABEAS CORPUS RULE 4. Given the sound logic of the Indiana opinion, and the substantial amount of undisputed evidence, it is apparent that Williams is not entitled to relief, and therefore, his habeas corpus petition must be denied.

Williams also asks me to set aside his sentence. He argues that because there was insufficient evidence to support his conviction for the conspiracy and precursor charges, he cannot be found to be an habitual offender, and accordingly his sentence must be reduced. But since I find no reason to overturn the appeals court's decision rejecting the sufficiency of the evidence claim, this argument fails.

As a final matter, pursuant to Rule 11 of the Rules Governing Section 2254 Cases, I must consider whether to grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v.*

*McDaniel*, 529 U.S. 473, 484 (2000). Given the clearly established Supreme Court law outlining the high standard to be applied in sufficiency of the evidence habeas corpus cases, I have no reason to think that reasonable jurists could debate the correctness of this outcome. Therefore, a certificate of appealability must be denied.

For the foregoing reasons, the court:

(1) **DISMISSES** the petition pursuant to SECTION 2254 HABEAS CORPUS RULE 4; and

(2) **DENIES** a certificate of appealability pursuant to SECTION 2254 HABEAS CORPUS RULE 11(a).

**SO ORDERED**.

ENTERED: July 17, 2012

                                                 /s/ Philip P. Simon
                                                 Philip P. Simon, Judge
                                                 United States District Court